FILED
RECEIVED (WSN)

2012 OCT 24  P 2: 46

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N. DISTRICT OF CALIFORNIA

Your name: John Muegge
Address: 10891 Alta Mesa Rd
Wilton, Ca 95693
Phone Number: 916 687-0577
E-mail Address: jmuegge@frontiernet.net
Pro Se

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

Axel Braun

   Plaintiff

   vs.

Primary Distributor Doe 1 and Defendant
Does 2 through 69

   Defendants.

_____/

CASE No. 12-3690 YGR (JSC)

**ORDER GRANTING EX PARTE APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY (Dkt. No. 4)**

MOTION TO QUASH OR MODIFY SUBPOENA



### MOTION TO QUASH OR MODIFY SUBPOENA

I received a letter from my ISP regarding a subpoena, which included a copy of the Order Granting Plaintiff's Application for Leave to Take Early Discovery.

From accounts of previous defendants and a copy of an example of a previous demand letter from The Law Office of D. Gill Sperlein, these subpoena notifications are followed by demand letters. These letters -- which demand around $1875.00 to avoid dealing

with their lawsuit[1] -- and their probable phone calls, are the reason I am filing this motion, and for this reason, I respectfully request that I be allowed to do so without revealing my personally identifying information.

## INTRODUCTION

To cut court costs while suing as many individuals as possible, Plaintiff's counsel, The Law Office of D. Gill Sperlein is using improper joinders in their mass lawsuits alleging copyright infringement through BitTorrent. This lawsuit is very similar to lawsuits by Steele Hansmeier which included over twenty-thousand defendants in the Northern District of Calfornia alone. Steele Hansmeier (Formerly Steele Law Firm, LLC) also had mass lawsuits in Illinois, including a BitTorrent case nearly identical to this one, *CP Productions, Inc. v. Does 1-300 case 1:2010cv06255,* and in this case the court notes before dismissal:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap — if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.

Later, Judge Milton Shadur writes about Steele Hansmeier's abuse of the litigation system "in more than one way" with its "ill-considered" lawsuit:

> This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants – this one seeking the nullification of a February 11, 2011 subpoena issued to Comcast Communications, LLC. This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. But because the aggrieved Doe defendants continue to come out of the woodwork with motions to quash, indicating an unawareness of this Court's dismissal of this action, 1 CP's counsel is ordered to

---

[1] Google search: "http://www.scribd.com/doc/56009753/Ransom-Letter-Redacted" See Attachment A.

appear in court on March 9, 2011 at 9:00 a.m. Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

*CP Productions, Inc. v. Does 1-300 case 1:2010cv06255 (dismissed ALL John Doe defendants)*

In another Steele Hansmeier BitTorrent case in Illinois, Judge Harold A. Baker writes in denying the motion for expedited discovery:

> Plainly stated, the court is concerned that the expedited *ex parte* discovery is a fishing expedition by means of a perversion of the purpose of and intent of Fed. R. Civ. P. 23.

*VPR Internationale vs. Does 1-1017 case 2:2011cv02068*

In the Northern District of California, these nearly identical BitTorrent cases have been severed for improper joinder:

> *Pacific Century International LTD v. Does 1-101 case 4:2011cv02533 (severed does 2-101)*
> *IO Group, Inc. v. Does 1-435 case 3:2010cv04382 (severed does 2-435)*
> *Diabolic Video Productions, Inc v. Does 1-2099 case 5:2010cv05865 (severed Does 2-2099)*
> *New Sensations, Inc v. Does 1-1768 case 5:2010cv05864 (severed Does 2-1768)*

In yet another nearly identical BitTorrent case, filed in the Northern District of California by Steele Hansmeier, *Millennium TGA, Inc v. Does 1-21 case 3:2011cv02258*, Judge Samuel Conti found the same joinder problems, and wrote in his order denying request for leave to take early discovery, "This Court does not issue fishing licenses;" And these nearly identical BitTorrent cases in the Northern District of California by the same plaintiff Boy Racer, again represented by Steele Hansmeier, have been severed for improper joinder:

> *Boy Racer, Inc v. Does 1-52 case 5:2011cv02329 (severed Does 2-52)*
> *Boy Racer, Inc v. Does 1-71 case 5:2011cv01958 (severed Does 2-72)*

## ARGUMENT

**1) Plaintiff Has Improperly Joined 69 Individual Defendants Based on Entirely Disparate Alleged Acts**

The Plaintiff's joinder of 69 defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued. Mass joinder of individuals has been disapproved by federal courts in both the RIAA cases and elsewhere. As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . .
> Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

*BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants).

Rule 20 requires that, for parties to be joined in the same lawsuit, the claims against them must arise from a single transaction or a series of closely related transactions. Specifically:

Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20. Thus, multiple defendants may be joined in a single lawsuit only when three conditions are met:

(1) the right to relief must be "asserted against them jointly, severally or in the alternative"; (2) the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; **and** (3) there must be a common question of fact or law common to all the

defendants. *Id.*

Joinder based on separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement has been rejected by courts across the country. In *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), the court ordered severance of lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same violation of the law in exactly the same way. The court explained: "[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *LaFace Records*, 2008 WL 544992, at *2. In *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006), the court *sua sponte* severed multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement. See also *Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used same ISP and P2P network to conduct copyright infringement); *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); General Order, *In re Cases Filed by Recording Companies*, filed in *Fonovisa, Inc. et al. v. Does 1-41* (No. A-04-CA-550 LY), *Atlantic Recording Corporation, et al. v. Does 1-151* (No. A-04-CA-636 SS), *Elektra Entertainment Group, Inc. et al. v. Does 1-11* (No. A-04-CA-703 LY); and *UMG Recordings, Inc., et al. v. Does 1-51* (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004), RJN Ex. A, (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing);

Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, *Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 (N.D. Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery as to first Doe defendant but staying case as to remaining Does until plaintiff could demonstrate proper joinder).

Plaintiff may argue that, unlike the RIAA cases, its allegations here are based upon use of the Internet to infringe a single work. While that accurately describes the facts alleged in this case, it does not change the legal analysis. Whether the alleged infringement concerns a single copyrighted work or many, it was committed by unrelated defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses. That attenuated relationship is not sufficient for joinder. See BMG Music v. Does 1-203, 2004 WL 953888, at *1.

Nor does the analysis change because the BitTorrent protocol works by taking small fragments of a work from multiple people in order to assemble a copy. Nearly all of the older protocols in the aforementioned cases work in this fashion. Kazaa, eDonkey and various Gnutella clients (e.g., LimeWire) have incorporated multisource/swarming downloads since 2002.[1]

Discussions of the technical details of the BitTorrent protocol aside, the individual Defendants still have no knowledge of each other, nor do they control how the protocol works, and Plaintiff has made no allegation that any copy of the work they downloaded came jointly from any of the Doe defendants. Joining unrelated defendants in one lawsuit may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for

---

[1] http://gondwanaland.com/mlog/2004/12/30/deployment-matters/

individual cases and by enabling its counsel to avoid travel, but that does not mean these well-established joinder principles need not be followed here.

Because this improper joining of these Doe defendants into this one lawsuit raises serious questions of individual fairness and individual justice, the Court should sever the defendants and "drop" Does 2-60, from the case.

*See* Fed. R. Civ. P. 21.


**2) Plaintiff Has Improperly Joined 69 Individual Defendants as some of the IP Addresses Might Not Be Part of the Swarm but Instead were Randomly Inserted as a Decoy by the BitTorrent Tracker Software or were Possibly Faked.**

Most often, companies such as BayTSP and MediaSentry are hired to connect to BitTorrent trackers, and send takedown notices to the users (via their ISP) who download movies, TV-shows or music albums of a company they represent. This is a fairly easy process, since BitTorrent is far from anonymous: Every user necessarily broadcasts his or her IP-address to other peers in the swarm.

Sometimes anti-piracy outfits use their own trackers to gather evidence. Last week we reported that The Pirate Bay started to actively remove these suspicious trackers from their torrents, with some help from torrenteditor.com . Running a tracker is not required though, to collect information from BitTorrent users. In fact, many attempt to use publicly available trackers such as The Pirate Bay to do so. However, the tracker owners are aware of this, and trick these tracking companies by polluting the list of IP-addresses the tracker returns. That is one of the techniques The Pirate Bay uses, just to show how flawed the evidence gathering is.

Polluting the evidence works like this. When a client asks for a list of peers who are downloading the same torrent, the tracker software automatically inserts several "random IP addresses" that are not in the swarm. They are based on existing sub-nets, but might be from people who may not even be aware that BitTorrent exists. This means that the evidence that's being gathered by anti-piracy companies includes IPs that belong to people that were not downloading the movie or album they are accused of.

Also from a post from the website listed below.

http://www.daniweb.com/hardware-and-software/networking/threads/78930/fake-ip-on-torrent-network#

This person describes how anyone can place a fake IP address into a download swarm.

Fake IP on torrent network?

I have a problem where I am receiving reports from my ISP about torrents being downloaded when I am not downloading them. You can read more details at my Hidden Torrent Programs? thread. While thinking about the problem, an idea occurred to me. What if there is a torrent client that allows you to lie about your IP address to the swarm.

I know there are programs that claim to hide your IP (a la Hide-My-IP.com ), but all they are doing (as far as I can tell) is provide a paid anonymous proxy service. This wouldn't solve my problem of people using my IP to download torrents. So there must be something more involved.

Going back to my initial idea, what if you could lie about your IP to the swarm? As far as I know, you don't have to be honest about your IP on the swarm since firewalled connections can still transfer data. So, is this possible? Can a client lie about its IP and still download data? Could someone be using my IP to jump on a swarm and download while giving me the legal problems?

+++++ Update +++++

After searching around for a bit, I found out that my idea isn't so crazy. If you read Tweaking your system to get the most out of BitTorrent , you will find that you can give the official BitTorrent client a command as follows:

1. ```
"c:\program files\bittorrent\btdownloadgui.exe" --ip 123.45.67.89 --responsefile "%1"
```

Notice that you can tell the client exactly what to report as the IP address. This means that if my internet connection is through Comcast, and I want to download copyrighted content, all I have to do is lie about my IP. I could chose an IP that's in a different ISP's control so there's no way that I'd be suspected!

Dated: 10/22/2012

Respectfully submitted,

*John Muegge*

*Pro Se*

Attachment A

May ▬, 2011

▬

Re: Civil Matter Io Group, Inc. v. Does 1-244, C-10-3647
Limited Settlement Opportunity

Dear ▬

I am an attorney representing Io Group, Inc., which does business as Titan Media®. Recently, your Internet access account was used to illegally distribute an unauthorized copy of an Io Group movie using the eDonkey2000 (eD2K) network.

Io Group, Inc. actively pursues all acts of infringement, and recently filed a lawsuit to recover damages for these infringing acts. The name of the case is Io Group, Inc. v. Does 1-244 and the docket number in the Northern District of California is C-10-3647. The Complaint identifies the Defendant responsible for the infringement occurring through your account as Doe Number ▬ After filing the Complaint, Io Group subpoenaed your service provider to obtain your identity. The Court has scheduled a case management conference for June 2, 2011 at 3 p.m. You can avoid any further legal action by entering a Settlement Agreement according to the terms outlined herein.

Copyright law allows for statutory damages ranging from $750 to $30,000 per infringed work, ($150,000 if willful). Plaintiff may also be entitled to recover costs and attorney fees. In order to avoid the time and expense of continued litigation, Io Group offers to settle its claims against you for $1,875.00 nonnegotiable. This offer is only available until 5/23/2011. At that time, the settlement demand will increase to no less than $3,375.00.

If you would like to take advantage of this early settlement opportunity, enter the following url into your Internet browser:

http://www.ClaimVendor.com/settle1.php?▬

You can pay online using PayPal or a credit card or you can print the settlement agreement and mail it with a check. In some cases, a payment plan may be available. There is more information about the lawsuit and this settlement opportunity in the FAQ section of the website. If you would like us to send you the above settlement link electronically so that you can click on it rather than typing it in to your browser, send your request by e-mail to info@claimvendor.com, being sure to include the following ip address: ▬

It is imperative you respond to this letter. Unless you contact this law firm by 5/23/2011 the firm will conclude this is a valid claim and you are responsible for the infringing activity. The Firm

584 castro street, suite 879, san francisco, ca 94114   p 415.404.6615   f 415.404.6616   gill@sperleinlaw.com

may at any time after 5/23/2011, amend the Complaint to name you personally and proceed to serve upon you a Summons, Amended Complaint and other legal documents.

YOU ARE OBLIGATED TO PRESERVE ANY AND ALL EVIDENCE THAT MAY REASONABLY BE RELEVANT TO THIS MATTER. DO NOT DELETE OR ERASE ANY FILES FROM YOUR COMPUTER(S) OR REFORMAT/SCRUB YOUR HARD DRIVE(S). IF YOU TAKE ANY ACTION THAT RESULTS IN THE DESTRUCTION OR LOSS OF RELEVANT EVIDENCE, A JUDGE MAY ALLOW AN INFERENCE THAT THE EVIDENCE WAS FAVORABLE TO THE OPPOSITION. A JUDGE ALSO COULD ORDER DEFAULT TO BE ENTERED AGAINST YOU OR IMPOSE OTHER SANCTIONS. THIS DUTY TO PRESERVE EVIDENCE INCLUDES WITHOUT LIMITATION, ALL ELECTRONIC VIDEO FILES OR OTHER ELECTRONIC FILES AND/OR DATA RELATING TO COPYING OR TRANSMITTING VIDEO FILES, RELEVANT E-MAILS, DVDs, COPYING/RIPPING EQUIPMENT, OR PROGRAMS/APPLICATIONS USED TO COPY VIDEO FILES.

This letter does not constitute an exhaustive statement of Io Group's legal position, nor is it a waiver of any of Io Group's rights and/or remedies in this or any other matter, all of which are hereby expressly reserved.

Because of the serious nature of this matter, I encourage you to seek advice of a competent attorney.

Sincerely,

D. GILL SPERLEIN
ATTORNEY FOR IO GROUP, INC.

Account Holder at ▓▓▓▓▓▓
Copyrighted Content

----------------------------------------------------------

----------------------------------------------------------
$1,875.00 total (if Agreement reached on or before 5/23/2011)
$3,375.00 (after 5/23/2011)

support@ClaimVendor.com